IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MATT JONES** *AKA MACK JONES*, | : |
|     **Plaintiff,** | : |
| | : |
| v. | :    **CIVIL ACTION NO. 23-CV-2967** |
| | : |
| **JOSEPH GANSKY**, *et al.*, | : |
|     **Defendants.** | : |

**MEMORANDUM**

**SCOTT, J.**                                                                                                         **OCTOBER  17 , 2023**

*Pro se* Plaintiff Matt Jones *aka Matt Jones*[1], a prisoner at FCI Bennettsville, filed a Complaint alleging Fourth Amendment claims related to a search, arrest, and criminal prosecution that took place in 2018.  For the foregoing reasons, the Court will direct service of the Complaint for a responsive pleading on Jones's Fourth Amendment malicious prosecution claims and will dismiss Jones's remaining claims with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

**I.  FACTUAL ALLEGATIONS**

Jones names the following Defendants in his Complaint:  (1) Joseph Gansky, Bensalem Township Police Department ("BTPD") Corporal Sergeant; (2) Joseph George, Philadelphia Police Department ("PPD") Detective; (3) Matthew Tobie, BTPD Detective; (4) Christopher Grayo, BTPD Police Officer; (5) Jillian Fox, BTPD Police Officer; (6) Dale Keddie, Detective/DEA with the Bucks County District Attorney's Office; and (7) Douglas Muraglia, an

---

[1] Jones filed the Complaint using his nickname, Mack Jones.  However, to facilitate service of documents on Plaintiff at the prison at which he is housed, the Court will direct the caption to be changed to include the name by which the prison identifies him, Matt Jones.

officer with the New Jersey State Police ("NJSP"). (Compl. at 1.)[2] Jones alleges that Defendants acted "in concert with one another" and "agreed to use a ruse for entry into [Jones's] residence" in violation of his Fourth Amendment rights. (*Id*. at 1-2.) Specifically, he alleges that a drug investigation began in early 2018 when a woman named Carol Lucy twice sold heroin to cooperating witnesses in January and February. (*Id*. at 2.) In June of 2018, the Defendants obtained a warrant for Lucy's arrest. (*Id*.) Through cell phone "ping/track[ing]," Defendants located Lucy's cell phone at 108 Federal Street, Bensalem, Pennsylvania. (*Id*. at 3.) Jones resides at this address. (*Id*.) Defendants did not have a search or arrest warrant for Jones.[3] (*Id*. at 2, 3.)

On July 17, 2018, Defendants Gansky, George, Tobie, Grayo, Muraglia, and Fox converged on 108 Federal Street and banged loudly on Jones's door. (*Id*. at 3.) When Jones responded to the knocking, Gansky, who was dressed in police uniform, stated that there was an "abandoned 911 call from a woman screaming a man with a gun" and that due to the troubling nature of the 911 call, the officers need to enter Jones's residence "to make sure there were no injured people within." (*Id*.) Jones states that despite this false "ruse" used by Defendants to gain access to his residence, he never consented to them entering. (*Id*.) Once inside Jones's residence, Defendants observed a firearm in plain sight and obtained a search warrant for Jones's residence. (*Id*.) Pursuant to a subsequent warranted search of his residence, Defendants found a "significant amount of money, drugs, and guns." (*Id*. at 3-4.) The evidence was ultimately used

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

[3] Jones attaches as exhibits, excerpts from Defendants' investigation report, and a BTPD Incident Report dated July 17, 2018. (*See* Compl. at 17, 18.)

to file a criminal complaint against Jones in the United States District Court for the Eastern District of Pennsylvania. (*Id*. at 4.)

A review of Jones's public criminal docket reveals that on December 17, 2018, a criminal complaint was filed against Jones and Lucy.[4] (*See United States v. Jones*, Crim. No. 19-39, at ECF No. 1.) During a December 26, 2018 probable cause hearing before Magistrate Judge Carol Sandra Moore Wells, the Government introduced evidence obtained from 108 Federal Street. (Compl. at 4; *see also Jones*, Crim. No. 19-39, at ECF No. 10.) Also at this hearing, Keddie provided "false testimony" that Jones consented to the search of his residence. (Compl. at 4.) In June of 2019, a grand jury returned a second superseding indictment charging Jones with seven Counts: (1) conspiracy to distribute heroin; (2) possession with intent to distribute heroin; (3) possession of a firearm in furtherance of a drug trafficking crime; (4) possession of a firearm by a felon; and distribution of heroin (Counts 5, 6, and 7). (*See Jones*, Crim. No. 19-39, at ECF No. 54.) Trial was held on October 7-10, 2019. (*Id*. at ECF Nos. 78, 80, 81, 84.) Prior to trial, Jones had moved to suppress evidence recovered from his home at 108 Federal Street on grounds that the warrantless search violated his Fourth Amendment rights. (*Id*. at ECF No. 38.) The District Court denied Jones's motion to suppress on June 25, 2019. (*Id*. at ECF Nos. 58-59.) At the trial, the jury convicted Jones on all counts. (*See id*. at ECF No. 106.) He was sentenced to 120 months of imprisonment. (*Id*.) Jones appealed his conviction and sentence to the Third Circuit. (*See* ECF No. 110); *see also United States v. Jones*, App. No. 20-1510 (3d Cir.).

---

[4] The Court may take judicial notice of the public docket in Jones's underlying criminal case. *In re Congoleum Corp.*, 426 F.3d 675, 679 (3d Cir. 2005) ("We take judicial notice of the state court proceedings insofar as they are relevant."); *United States v. Graves*, 849 F. App'x 349, 354 (3d Cir. 2021) (taking judicial notice of criminal docket); *Orabi v. Att'y Gen.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another Court's docket.")

During appellate briefing, the Government moved to vacate the judgment and remand the proceedings to the District Court, contending that after further reflection, it believed that the motion to suppress should have been granted and that the evidence obtained from Jones's house should not have been admitted into evidence. *Jones*, App. No. 20-1510 (3d Cir.), at ECF. No. 40. The Third Circuit granted the Government's motion (*id*. at ECF No. 41) and issued a mandate on April 21, 2021, remanding the case to the District Court for further proceedings (*id*. at ECF No. 42). On remand at the District Court, the Government moved to dismiss Counts 2, 3, and 4 of the Superseding Indictment as those counts had been supported by the evidence from Mr. Jones's home that was subject to the suppression motion. (*See Jones*, Crim. No. 19-39, at ECF No. 147.) The motion was granted on May 20, 2022, and the case was set for a new trial to begin on August 22, 2022. (*Id*. at ECF No. 147, 148.) After a four-day trial, a jury found Jones guilty of Counts 1 and 7 and not guilty of Counts 5 and 6. (*Id*. at ECF No. 184.)

Based on these allegations, Jones asserts constitutional claims against Defendants for malicious prosecution, due process violations, illegal seizure, illegal entry, illegal search, and false evidence. He also asserts a *Monell* claim against Defendants in their official capacities. He requests money damages.[5]

---

[5] Jones also seeks a declaration that the Court "recognize that the defendants . . . violated his constitutional rights under color of state law." (Compl. at 8.) However, a "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct," and is also not "meant simply to proclaim that one party is liable to another." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm."). Because Jones's request for a declaration only seeks to adjudicate past conduct, it will be dismissed.

## II.     STANDARD OF REVIEW

Although Jones has paid the filing fee in full, the Court has the authority to screen his Complaint pursuant to 28 U.S.C. § 1915A.  *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding in forma pauperis).  Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).  In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id*. § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id*. § 1915A(b)(2).

Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the pro se] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Additionally, a court may dismiss a complaint based on an affirmative defense such as the statute of limitations when the "defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017); *Whitenight v. Cmwlth. of Pa. State Police*, 674 F. App'x 142, 144 (3d Cir. 2017) (*per curiam*) ("When screening a complaint under § 1915, a district court may *sua sponte* dismiss the complaint as untimely under the statute of limitations where the defense is obvious from the complaint and no development of the factual record is required." (citations omitted)).  As Jones is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

### III.   DISCUSSION

Jones brings claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brough against state actors in federal court.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).  For the following reasons, Jones's malicious prosecution claim may proceed and will be served for a responsive pleading, and the balance of Jones's Complaint will be dismissed with prejudice as time-barred.

#### A.   Claims Based on July 17, 2018 Search of Jones's Residence

Jones asserts an assortment of claims based on Defendants' "ruse" to gain entrance to, and subsequently search, his residence.  In particular, he asserts claims for illegal seizure, illegal entry, illegal search, due process violations, and false evidence.  In support of his illegal seizure,

illegal entry, and illegal search claims, Jones alleges that on July 17, 2018, Defendants entered his home without any search or arrest warrant and seized him. (Compl. at 7.) In support of his due process claim, Jones asserts that on the same day, Defendants "exceeded their authority" by gaining entrance to his residence without a warrant. (*Id*.) In support of his false evidence claim, Jones alleges that Gansky, George, and Keddie provided false testimony that Jones provided consent to enter his residence and that the testimony "influenced [the] probable cause" determination, which resulted in Jones "being confined in prison in violation of his Fourth Amendment rights." (*Id*.) The Court understands the false evidence claim to be based on testimony provided at the December 26, 2018 hearing before Judge Wells. (*Id.* at 4.)

All of the Complaint's factual allegations supporting Jones's claims took place either in July 2018 or December 2018. Jones filed this case in August 2023, more than four years after the events that gave rise to his claims. A complaint is subject to dismissal on statute of limitations grounds when the limitations defense is "apparent on the face of the complaint." *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Jones's § 1983 claims are subject to a two-year statute of limitations. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (explaining that the statute of limitations for § 1983 claims is governed by the personal injury tort law of the state where the cause of action arose and that Pennsylvania has a two-year statute of limitations for personal injury actions); *see also Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). A claim accrues "when a plaintiff has a complete and present cause of action, that is, when [he] can file suit and obtain relief." *Dique*, 603 F.3d at 185 (quotations omitted). In general, this means that the statute of limitations will start running at the time the plaintiff "knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Del., Inc. v. City of*

*Phila.*, 142 F.3d 582, 599 (3d Cir. 1998); *see also Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 480 (3d Cir. 2014).

Jones's claims for illegal seizure, illegal entry, and illegal search accrued on July 17, 2018, when Defendants allegedly used a ruse to enter his residence. *See Woodson v. Payton*, 503 F. App'x 110, 112 (3d Cir. 2012) (*per curiam*) (concluding that Fourth Amendment unreasonable search and seizure claims accrued when the search and seizure occurred because this was "the moment that [the plaintiff] indisputably knew about the alleged faults of search and seizure"). The latest that any due process claim could have accrued was when a criminal complaint was filed in December 2018, charging Jones with crimes based on evidence seized during the alleged unlawful search. *See Smith v. Delaware Cty. Court*, 260 F. App'x 454, 455 (3d Cir. 2008) (*per curiam*) (applying Pennsylvania's two-year statutory period to plaintiff's claim that he was denied due process after his arrest and noting that the statute of limitations begins to run from the time when the plaintiff knows or had reason to know of the injury forming the basis for the federal civil rights action). Finally, Jones's claims for false evidence accrued on the date that the alleged inaccurate testimony was provided by Defendants – December 26, 2018.[6] *See Pittman v. Metuchen Police Dep't*, No. 08-2373, 2010 WL 4025692, at *6 (D.N.J. Oct. 13, 2010) (concluding that claim for false testimony accrued when law enforcement defendants testified at the grand jury).

---

[6] To the extent that alleged false testimony was provided at later points during the prosecution within the two-year limitations period, any claims based on this false testimony would nevertheless be dismissed. Witnesses are entitled to absolute immunity from civil rights claims based on their testimony in court. *See Briscoe v. LaHue*, 460 U.S. 325, 329-30 (1983) (holding that under absolute witness immunity a convicted defendant could not state a claim for damages under § 1983 against a police officer who had allegedly given perjured testimony at the defendant's criminal trial); *Carter v. Kane*, 717 F. App'x 105, 109 (3d Cir. 2017) (*per curiam*) (holding that witnesses are absolutely immune from damages liability based on their testimony).

Jones filed this civil rights case in August of 2023, more than four years after any of these claims accrued. Moreover, the facts do not support a reasonable basis for equitable tolling. *See Lloyd v. Ocean Twp. Counsel*, 857 F. App'x 61,64 (3d Cir. 2021) (*per curiam*) ("Equitable tolling is generally appropriate where: (1) a defendant actively misleads a plaintiff regarding a cause of action; (2) a plaintiff has been prevented from asserting a claim as a result of other extraordinary circumstances; or (3) a plaintiff has timely asserted her claims, but in the wrong forum."). Accordingly, Jones's claims for illegal seizure, illegal entry, illegal search, due process violations, and false evidence are dismissed as time-barred.

Jones also purports to assert a *Monell* claim against Defendants Gansky, George, Tobie, Grayo, Fox, and Muraglia, in their official capacities. (*See* Compl. at 7.) Claims against state or local officials named in their official capacity are indistinguishable from claims against the governmental entity that employs them. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. Thus, Jones's § 1983 claim against Muraglia, who is employed by the NJSP, is in essence a claim against the State of New Jersey. States are not considered "persons" who may be liable under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). Furthermore, the Eleventh Amendment bars suits against a state and its agencies, including the NJSP, in federal court when the state has not waived that immunity. *See Allen v. New Jersey State Police*, 974 F.3d 497, 505 (3d Cir. 2020) (affirming dismissal of § 1983 official capacity claims against NJSP official because the NJSP is a state agency entitled to Eleventh Amendment immunity).

Similarly, Jones's § 1983 claims against Gansky, Tobie, Grayo, and Fox – who are employed by the Bensalem Township Police Department – are really claims against the Bensalem County, and his claim against George – who is employed by the Philadelphia Police Department – is really a claim against the City of Philadelphia.  To plead a *Monell* municipal liability claim under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *Monell*, 436 U.S. at 694.  A plaintiff may also state a basis for *Monell* municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected."  *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  *Monell* claims are also subject to a two-year statute of limitations.  *Buelna v. City of Philadelphia*, No. 01-5114, 2002 WL 531538, at *2 (E.D. Pa. Apr. 8, 2002).

Jones's *Monell* claim against Gansky, Tobie, Grayo, Fox, and George are also time-barred.  Jones bases his *Monell* claim against Defendants on allegations that Defendants were "the first officers collectively together when [he] answered his door" on July 17, 2018.  (Compl. at 7.)  He also alleges that the municipalities that employed Defendants failed to train their officers with respect to following rules when acting under color of state law, and that the "ruse" Defendants used "is an act so widespread through these municipalities" that it has become a "normalcy."  (*Id.*)  All of the factual allegations supporting Jones's *Monell* claims took place on July 18, 2018, the day that the Defendants gained entrance to Jones's residence by making up a story about a dropped 911 call.  Jones filed this case in August 2023, more than five years after the events that gave rise to his *Monell* claims.  Accordingly, Jones's *Monell* claims against Gansky, George, Tobie, Grayo, and Fox are time-barred and must be dismissed.

B.      **Malicious Prosecution Claims**

Jones also asserts claims for malicious prosecution based on the prosecution for, and later summary dismissal of Counts 2, 3, and 4 of the Superseding Indictment in his federal criminal case. Malicious prosecution claims brought under the Fourth Amendment accrue once the underlying criminal proceedings have resolved in the plaintiff's favor because that is when the causes of action are complete. *See McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019); *Rose v. Bartle*, 871 F.2d 331, 349 (3d Cir. 1989); *Lloyd*, 857 F. App'x at 64 (stating that the statute of limitations begins to run on malicious prosecution claims when "the criminal proceedings against the defendant (i.e., the § 1983 plaintiff) have terminated in [his] favor" (quotation omitted)); *see also Coello v. DiLeo*, 43 F.4th 346, 354-55 (3d Cir. 2022) ("A § 1983 claim sounding in malicious prosecution accrues when 'the prosecution terminate[s] without a conviction.'"). Here, Jones's malicious prosecution claims accrued when Counts 2, 3, and 4 were dismissed by the district court on May 20, 2022. *See Manivannan v. Cnty. of Ctr., Pennsylvania*, No. 21-1359, 2023 WL 173141, at *3 (M.D. Pa. Jan. 12, 2023) (noting that the plaintiff's "underlying criminal case [did] not 'terminate' favorably for claim accrual purposes when his original conviction is vacated and remanded for retrial" but instead when the charges were actually dismissed). Accordingly, Jones's malicious prosecution claims are not barred by the applicable two-year statute of limitations.

To state a constitutional malicious prosecution claim, a plaintiff must allege facts establishing that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a

consequence of a legal proceeding." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009). "Probable cause exists if there is a fair probability that the person committed the crime at issue." *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (internal quotations omitted). "To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022). Jones alleges that Defendants – all of whom were present during the search of his residence or participated in the investigation leading up to the search – lacked probable cause to search his home and instead relied on a ruse to gain entrance. He also alleges that any finding of probable cause at the hearing before Judge Wells was based on inadmissible evidence and false testimony. Finally, the public docket reveals that the charges terminated in Jones's favor when the district court dismissed Counts 2, 3, and 4 after convictions on those counts had been vacated by the Third Circuit. Based on Jones's factual allegations, Jones's malicious prosecution claims may proceed pass statutory screening and will be served for a responsive pleading.[7]

## IV. CONCLUSION

For the foregoing reasons, the Court will direct service of Jones's Complaint on Defendants so that they may respond to Jones's remaining Fourth Amendment malicious

---

[7] The Court understands Jones's malicious prosecution claims to be premised exclusively on the charges that were dismissed following the Government's admission that the evidence supporting those charges should have been suppressed. In any event, it is worth noting that Jones cannot state a claim for malicious prosecution based on the charges of which he was found guilty. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (holding that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated"); *Coello*, 43 F.4th at 355 (concluding that the "favorable termination" requirement for malicious prosecution claims was met when the plaintiff's criminal conviction was vacated).

prosecution claim. The balance of the Complaint will be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). Jones will not be given leave to file an amended complaint as to his dismissed claims because the Court concludes that amendment of the dismissed claims would be futile. An appropriate order follows.

**BY THE COURT:**

*S/KAI N. SCOTT*
**KAI SCOTT, J.**