# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MATT JONES** *AKA MACK JONES*, | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 23-CV-2967** |
| | : | |
| **JOSEPH GANSKY,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

**SCOTT, J.**                                                                     **OCTOBER 10, 2024**

*Pro se* Plaintiff Matt Jones *aka Mack Jones*, a prisoner at FCI Bennettsville, brought this civil rights action pursuant to 42 U.S.C. § 1983 against various law enforcement officers who gained entry to his home by using a false exigency. The officers made-up a story that they received a 911 call about a gun at the residence, and after gaining entry, they discovered incriminating evidence that led to criminal charges and ultimately a conviction against Jones. After evidence obtained pursuant to the ruse was later suppressed on appeal, and Jones's conviction and sentence on the charges vacated, Jones asserted Fourth Amendment claims against the officers in connection with the search, arrest, and prosecution. Upon screening pursuant to 28 U.S.C. § 1915, the Court dismissed all of Jones's claims as time-barred, with the exception of the malicious prosecution claims. *See Jones v. Gansky*, No. 23-2967, 2023 WL 6881050, at *3 (E.D. Pa. Oct. 17, 2023). Before the Court are Defendants Joseph George, Christopher Grayo, Matthew Tobie, Joseph Gansky, Douglas Muraglia, and Dale Keddie's Motions to Dismiss (ECF Nos. 19, 27, 47, 52, 60), and Jones's Responses (ECF Nos. 34, 42, 56, 57, 55, 56). For the reasons below, Defendants Motions will be granted.

I.      **BACKGROUND**

     A.      **Factual Allegations**

Jones names the following Defendants in his Complaint:  (1) Joseph Gansky, Bensalem Township Police Department ("BTPD") Corporal Sergeant; (2) Joseph George, Philadelphia Police Department ("PPD") Detective; (3) Matthew Tobie, BTPD Detective; (4) Christopher Grayo, BTPD Police Officer; (5) Jillian Fox, BTPD Police Officer[1]; (6) Dale Keddie, Detective/DEA with the Bucks County District Attorney's Office; and (7) Douglas Muraglia, an officer with the New Jersey State Police ("NJSP").  (Compl. at 1.)[2]  Jones alleges that Defendants acted "in concert with one another" and "agreed to use a ruse for entry into [Jones's] residence" in violation of his Fourth Amendment rights.  (*Id*. at 1-2.)

Prior to the alleged ruse, Defendants had been involved in a drug investigation that began in January of 2018.  (*Id*. at 2.)  As part of that investigation, a confidential source informed the NJSP about a woman named Carol Lucy, who allegedly had "access to large quantities of marijuana and heroin."  (*Id*.)  The NJSP began investigating Carol and learned that Lucy lived on Foster Street in Philadelphia.  (*Id*.)  Lucy allegedly sold heroin to a cooperating witness on two occasions in early 2018 in Cherry Hill New Jersey.  (*Id*.)  Jones was not present for either of these drug sales.  (*Id*.)  In June of 2018, the Defendants obtained a warrant for Lucy's arrest, and in July of 2018, they obtained a "ping order" for Lucy, which "allow[ed] investigators to electronically locate Carol Lucy's cellular phone."  (*Id*. at 2-3.)  Jones alleges that Defendants purposefully did not execute the warrant on Lucy at her home but waited until cell phone

---

[1] Defendant Fox has not yet been properly served in this matter.  Claims against Fox are not addressed in this Memorandum.

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

"ping/track[ing]" placed Lucy at Jones's home, located at 108 Federal Street, Bensalem, Pennsylvania.  (*Id*. at 3.)  Defendants did not have a search or arrest warrant for Jones.  (*Id*. at 2, 3.)

On July 17, 2018, Defendants Gansky, George, Tobie, Grayo, Muraglia, and Fox converged on 108 Federal Street and banged loudly on Jones's door.  (*Id*. at 3.)  When Jones responded to the knocking, Gansky, who was dressed in police uniform, stated that there was an "abandoned 911 call from a woman screaming [that there was] a man with a gun" and that due to the troubling nature of the 911 call, the officers needed to enter Jones's home "to make sure there were no injured people within."  (*Id*.)  Defendants Tobie, Grayo, Muraglia, and Fox were "flanking" Jones at his front door and then "without consent" they and Gansky "rushed into [Jones's] foyer."  (*Id*.)  Jones states that despite this false "ruse" used by Defendants to gain entry to his home, he never consented to them entering.  (*Id*.)  Once inside Jones's home, Defendants observed a firearm in plain sight.  (*Id*.)  Defendants then sought and obtained a search warrant for Jones's home.  (*Id*.)  When executing the search warrant, Defendants found a "significant amount of money, drugs, and guns."  (*Id*. at 3-4.)  The evidence was ultimately used to file a criminal complaint against Jones in the United States District Court for the Eastern District of Pennsylvania.  (*Id*. at 4.)  Jones alleges in his Complaint that "[t]he defendants together maliciously initiated a prosecution against [Jones], violating his [F]ourth [A]mendment [rights]."  (*Id*. at 2.)

A review of Jones's public federal criminal docket reveals that on December 17, 2018, a criminal complaint was filed against Jones and Lucy.[3]  *See United States v. Jones*, Crim. No. 19-

---

[3] The Court may take judicial notice of the public docket in Jones's underlying criminal case.  *In re Congoleum Corp.*, 426 F.3d 675, 679 (3d Cir. 2005) ("We take judicial notice of the state court proceedings insofar as they are relevant."); *United States v. Graves*, 849 F. App'x

39, at ECF No. 1.  During a December 26, 2018 probable cause hearing before Magistrate Judge

Carol Sandra Moore Wells, the Government introduced evidence obtained from the search of

108 Federal Street.  (Compl. at 4); *see also Jones*, Crim. No. 19-39, at ECF Nos. 10, 43.  Also at

this hearing, Keddie provided "false testimony" that Jones consented to the search of his home.

(Compl. at 4.)

In June of 2019, a grand jury returned a superseding indictment charging Jones with

seven Counts:  (1) conspiracy to distribute heroin; (2) possession with intent to distribute heroin;

(3) possession of a firearm in furtherance of a drug trafficking crime; (4) possession of a firearm

by a felon; and distribution of heroin (Counts 5, 6, and 7).[4]  *See Jones*, Crim. No. 19-39, at ECF

No. 54.  Trial was held on October 7-10, 2019.  *Id*. at ECF Nos. 78, 80, 81, 84.  Prior to trial,

Jones had moved to suppress evidence recovered from his home at 108 Federal Street on grounds

that the search violated his Fourth Amendment rights.  *Id*. at ECF No. 38.  The District Court

denied Jones's motion to suppress on June 25, 2019.  *Id*. at ECF Nos. 58-59.  At the trial, the jury

convicted Jones on all counts.  *See id*. at ECF No. 106.  He was sentenced to 120 months of

imprisonment.  (*Id*.)  Jones appealed his conviction and sentence to the Third Circuit Court of

Appeals.  (*See* ECF No. 110); *see also United States v. Jones*, App. No. 20-1510 (3d Cir.).

During appellate briefing, the Government moved to vacate the judgment and sentence

and remand the proceedings to the District Court, contending that after further reflection, it

believed that the motion to suppress should have been granted and that the evidence obtained

---

349, 354 (3d Cir. 2021) (taking judicial notice of criminal docket); *Orabi v. Att'y Gen*., 738 F.3d
535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another Court's
docket.").

[4] Counts 2, 3, and 4 all charge conduct that took place on July 17, 2018, the day of the
alleged illegal entry.  (*Jones*, Crim. No. 19-39, at ECF No. 54.)

4

from Jones's house should not have been admitted into evidence during Jones's trial.  *Jones*, App. No. 20-1510 (3d Cir.), at ECF. No. 40.  The Third Circuit granted the Government's motion, *id*. at ECF No. 41, and issued a mandate on April 21, 2021, remanding the case to the District Court for further proceedings, *id*. at ECF No. 42.  On remand at the District Court, the Government moved to dismiss Counts 2, 3, and 4 of the Superseding Indictment as those counts had been supported by the evidence that was obtained from Jones's home and later subject to the suppression motion.  *See Jones*, Crim. No. 19-39, at ECF No. 147.  The motion was granted on May 20, 2022, and the case was set for a new trial to begin on August 22, 2022.  *Id*. at ECF No. 147, 148.  After a four-day retrial, a jury found Jones guilty of Counts 1 and 7 and not guilty of Counts 5 and 6.  *Id*. at ECF No. 184.

   **B.     Procedural History**

   Jones filed a civil rights Complaint asserting the following constitutional claims against Defendants:  malicious prosecution, due process violations, illegal seizure, illegal entry, illegal search, and false evidence.  He also asserted a *Monell* claim against Defendants in their official capacities.  In its October 17 Memorandum, the Court dismissed all of Jones's constitutional claims as time-barred, with the exception of his malicious prosecution claim.  *Jones*, 2023 WL 6881050, at *3.  The Court directed that the Complaint be served on all Defendants with respect to the malicious prosecution claim only.  (*See* ECF No. 9.)

   Defendants George, Grayo, Tobie, Gansky, Muraglia, and Keddie responded by filing Motions to Dismiss.  (*See* George MTD, ECF No. 19; Grayo & Tobie MTD, ECF No. 37; Gansky MTD, ECF No. 47; Muraglia MTD, ECF No. 52; Keddie MTD, ECF No. 60.)  Jones filed responses to each of the Motions.  (George Resp., ECF No. 34; Grayo & Tobie Resp., ECF No. 42; Gansky Resp., ECF No. 56; Muraglia Resp., ECF No. 57; Keddie Resp., ECF Nos. 55,

56.)  George filed a Reply.  (ECF No. 36.)  George, Grayo, Tobie, Gansky, and Muraglia
(collectively referred to as the "State Defendants") asserted nearly identical legal arguments in
their Motions.  They argue they Jones failed to allege that each of them had personal
involvement in the alleged constitutional wrongs.  They also argue that Jones fails to state a
malicious prosecution claim because he does not sufficiently allege an absence of probable
cause, and that the presence of probable cause negates any malicious prosecution claim
regardless of the legality of the search that led to discovery of the relevant evidence.  In
response, Jones identifies how each of the State Defendants was personally involved in the ruse
that led to the alleged illegal entry into his residence.  Jones also argues that the allegations are
sufficient to support a malicious prosecution claim because the "presence of probable cause to
arrest does not undo the violation" caused by the unlawful entry into his home.  (ECF No. 56 at
5.)

Defendant Keddie, who signed the Criminal Complaint against Jones as "DEA Task
Force Officer," *see Jones*, Crim. No. 19-39, at ECF No. 1, is the only named federal Defendant
in this case.  Keddie argues in his Motion that because he was acting under color of federal law –
as a DEA Task Force Officer – and not under state law, he is not liable under § 1983.  Keddie
also argues that the Court should decline to imply a remedy under *Bivens v. Six Unknown Named
Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971) for a malicious prosecution
claim against federal officers.[5]  Finally, Keddie contends that he is entitled to absolute immunity
for his testimony as a witness and to qualified immunity for his participation in Jones's
prosecution.

---

[5] "[A]ctions brought directly under the Constitution against federal officials have become
known as '*Bivens* actions.'"  *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017).

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  "A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555.)  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  It is the defendants' burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  To determine whether a complaint filed by a *pro se* litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff,

and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally).

## III.   DISCUSSION

### A.   The State Defendants' Motions to Dismiss

The State Defendants (George, Grayo, Tobie, Gansky, and Muraglia) seek to dismiss the only remaining claims asserted against them – Jones's malicious prosecution claims – contending that Jones fails to allege each of their personal involvement and that Jones nevertheless fails to state a malicious prosecution claim.  Jones asserts malicious prosecution claims pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

Jones's malicious prosecution claims center on his prosecution for, and the subsequent dismissal of, Counts 2, 3, and 4 of the Superseding Indictment (drug and firearm possession charges) in his federal criminal case.  These Counts were based on evidence that the Government later determined should have been suppressed.  To state a Fourth Amendment malicious

prosecution claim, a plaintiff must plausibly allege that a government official charged him without probable cause, leading to an unreasonable seizure of his person.  *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 558 (2024) (citing *Thompson v. Clark*, 596 U. S. 36, 43, and n.2 (2022)).  A malicious prosecution claim under § 1983 has five elements:  (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007).  That a "valid" crime was also charged along with the charge that ended in the plaintiff's favor does not create a categorical bar to a claim.  *Chiaverini*, 602 U.S. at 562 ("The question here is whether a Fourth Amendment malicious-prosecution claim may succeed when a baseless charge is accompanied by a valid charge. . . .  Consistent with both the Fourth Amendment and traditional common-law practice, courts should evaluate suits like Chiaverini's charge by charge. (emphasis added)).  A "favorable termination" occurs when a prosecution ends "without a conviction."  *Thompson*, 596 U.S. at 49.

Jones's Complaint, as pled, fails to state plausible malicious prosecution claims against George, Grayo, Tobie, Gansky, and Muraglia.  Notably, the allegations fail to raise an inference that the State Defendants lacked probable cause to initiate criminal proceedings – specifically, Counts 2, 3, and 4 of the Superseding Indictment – against Jones.  In both his Complaint and in his arguments raised in opposition to the State Defendants' Motions to Dismiss, Jones focuses on the State Defendants' lack of probable cause to enter and search his home and to arrest him.  (*See* Compl. at 2 (alleging that the Defendants "use an unfounded ruse" and that "[t]his unlawful entry is what furnished their probable cause"); *id*. at 6 (alleging that the defendants "created an

exigency that necessitated them to enter" his residence and that this "falsehood" was a "means to probable cause for an arrest"); *see, e.g.*, George Resp. at 2 ("Defendant George had no probable cause to even bang on the plaintiff's door let alone seize him.  Defendant George created probable cause/exigency, made a warrantless entry, ultimately found evidence of wrongdoing then took plaintiff to prison.").)  The State Defendants do not dispute that Jones sufficiently alleged a lack of probable cause to enter and search his home.  Rather, the State Defendants argue that regardless of whether they had probable cause to search his home, and regardless of the fact that the evidence was ultimately suppressed, and Jones's convictions on Counts 2, 3, and 4 overturned, because the officers had probable cause to *initiate* criminal charges after finding evidence of a "significant amount of money, drugs, and guns" (Compl. at 3-4), Jones is unable to allege a plausible malicious prosecution claim.  In other words, a lack of probable cause at the time of the search does not translate into a lack of probable cause to initiate criminal charges, even if the probable cause to initiate charges was based on illegally obtained evidence.

Courts that have considered the legitimacy of probable cause based on illegally obtained evidence have uniformly concluded that the Fourth Amendment's exclusionary rule does not apply to § 1983 proceedings.  *See Martin v. Marinez*, 934 F.3d 594, 599 (7th Cir. 2019) ("[T]he fact that the evidence was the fruit of an illegal detention does not make it any less relevant to establishing probable cause for the arrest because the exclusionary rule does not apply in a civil suit under § 1983 against police officers."); *Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016) ("We now join our sister circuits and hold that the exclusionary rule does not apply in a civil suit against police officers."); *Shaw v. Schulte*, 36 F.4th 1006, 1017 (10th Cir. 2022) ("Considering the marginal deterrent effect of applying the exclusionary rule within the § 1983 context with the fact that not applying the rule would merely truncate the scope of a § 1983

action but not bar pursuit of the action, we agree with the seeming consensus in our sibling circuits that the exclusionary rule and fruit-of-the-poisonous-tree doctrine do not apply in the § 1983 context."); *Lingo v. City of Salem*, 832 F.3d 953, 960 (9th Cir. 2016) ("Once again, the federal courts of appeals that have considered this issue appear to be in accord:  The lack of probable cause to . . . search does not vitiate the probable cause to arrest on the basis of evidence found in that search." (citations and internal quotations omitted)); *Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999) (concluding that no § 1983 malicious prosecution claim resulted after evidence of "illegally possessed firearms and narcotics" was ultimately suppressed but supported criminal charge, and stating that "[t]he evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all"); *see also Hector v. Watt*, 235 F.3d 154, 157 (3d Cir. 2001) ("Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy . . . but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." (internal quotation marks omitted)).[6]

---

[6] The Eleventh Circuit explained the rationale for precluding application of the exclusionary rule in § 1983 cases:

> The cost of applying the exclusionary rule in this context is significant: officers could be forced to pay damages based on an overly truncated version of the evidence. And the deterrence benefits are miniscule. Police officers are already deterred from violating the Fourth Amendment because the evidence that they find during an illegal search or seizure cannot be used in a criminal prosecution—the primary "concern and duty" of the police.  Moreover, plaintiffs can still sue a police officer for the illegal search or seizure, regardless of whether the officers can rely on illegally obtained evidence to defend themselves against other types of claims. This threat of civil liability will adequately deter police officers from violating the Fourth Amendment, whether or not the exclusionary rule applies in civil cases.  The additional marginal deterrence of applying the exclusionary rule in this context would not outweigh the societal cost of excluding relevant evidence and decreasing the possibility of obtaining accurate factual findings. And we see no difference

The allegations in Jones's Complaint about Defendants' alleged lack of probable cause focus on the entry to and subsequent search of Jones's home, and not on whether the Defendants had probable cause to charge him with drug and firearm crimes.  Indeed, Jones concedes that the Defendants had probable cause to arrest him and nowhere disputes that the drugs and guns discovered at his home belonged to him.  His theory is that the unlawful ruse and entry undermines the entire prosecution and that the admittedly valid probable cause to arrest does not "undo the violation" created by the illegal entry and search.  (*See* ECF No. 56 at 5.)  Again, Jones's focus on the illegal entry and search misses the point.  The distinction is critical for purposes of analyzing Fourth Amendment claims, and Jones's attempt to conflate the two probable cause considerations is not supported by the law.  *See Hector*, 235 F.3d at 157; *Martin*, 934 F.3d at 599; *Shaw*, 36 F.4th at 1017; *Lingo*, 832 F.3d at 960; *Washington v. Hanshaw*, 552 F. App'x 169, 173 (3d Cir. 2014) (affirming dismissal of § 1983 claim based on arrest without probable cause where the "police discovered incriminating evidence in the course of a search later determined to be unconstitutional" because victims of illegal searches "cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution").[7]

---

between applying the exclusionary rule and preventing an officer from proving probable cause based on evidence obtained during an illegal search. Exclusion of the evidence found by the officers on the basis that they had no legal right to search the area would, in effect, be an application of the exclusionary rule to this case. Such an application would be inappropriate.

*Black*, 811 F.3d at 1268 (internal citations and quotations omitted).

[7] In *Hector*, the Third Circuit also concluded that a malicious prosecution plaintiff must prove actual innocence.  *Hector*, 235 F.3d at 156.  That conclusion has since been abrogated by the Supreme Court.  *See Thompson*, 596 U. S. at 49 ("In sum, we hold that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence.  A plaintiff need only

Based on this law, the allegations of Jones's Complaint fail to raise a plausible inference that the State Defendants lacked probable cause to *charge* him with Counts 2, 3, and 4.  *See, e.g.*, *Russell v. City/Town of Hammonton*, No. 15-1669, 2020 WL 831124, at *7 n.7 (D.N.J. Feb. 20, 2020) ("[A] lack of probable cause for a seizure or search does not in and of itself preclude a finding of probable cause to initiate charges in a malicious prosecution action where a plaintiff was in fact committing a criminal offense and the officers discovered evidence thereof."); *Zamichieli v. Andrews*, No. 12-3200, 2016 WL 8732421, at *4 (E.D. Pa. Apr. 15, 2016) (finding that suppression of a gun in criminal proceedings did not prevent court from considering the gun in connection with § 1983 malicious prosecution claims); *Kovala v. Steele*, No. 09-0801, 2011 WL 1828514, at *5 n.10 (M.D. Pa. May 11, 2011) ("There was ultimately a ruling that the charge was unsupported by probable cause after the evidence obtained in the search of Mr. Kovala's home was suppressed.  However, that the evidence later was suppressed does not vitiate its relevance to the malicious prosecution claim."); *Jackson v. Davis*, No. 13-1717, 2014 WL 3420462, at *20 (W.D. Pa. July 14, 2014) (concluding that drugs discovered during an illegal search and suppressed during criminal proceeding could nevertheless be considered in connection with the plaintiff's malicious prosecution claim and whether officers had probable cause to charge the plaintiff drug crimes); *Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 183 (3d Cir. 2013) (*per curiam*) (affirming grant of summary judgment on malicious prosecution claim and rejecting the plaintiff's argument that the criminal trial court's subsequent suppression

---

show that the criminal prosecution ended without a conviction.").  The holding in *Thompson* appears to be limited to the favorable termination element of the claim and does not alter the analysis of the probable cause element of a malicious prosecution claim.  Stated differently, nothing in *Thompson* can be construed as abrogating the rule that a lack of probable cause to search does not translate into a lack of probable cause to charge, and that probable cause to charge may be based on evidence illegally obtained and ultimately suppressed.

of witnesses' out of court identifications was "irrelevant to a determination of whether probable cause supported the arrest warrant and the indictment").  Jones's inability to allege the absence of probable cause to initiate criminal proceedings against him is fatal to his malicious prosecution claims.  Accordingly, those claims will be dismissed against the State Defendants.[8]

    **B.**    **Keddie's Motion to Dismiss**

Keddie's Motion to Dismiss focuses on two issues:  first, whether he was acting under color of federal or state law during the relevant events described in the Complaint; and second, if he was acting under color of federal law, whether there is a *Bivens* remedy for malicious prosecution claims.[9]

    **1.**    **Keddie Acted under Color of Federal Law**

Keddie argues in his Motion that he was a deputized DEA Task Force Officer during the relevant events, and that as such, he was acting under color of federal law, not state law, and therefore not liable under § 1983.  Jones responds that while Keddie was investigating him, Keddie "was acting as a detective for the Bucks County District Atty. Office."  (Keddie Resp. 2.) Elsewhere in his Response, however, Jones concedes that Keddie was a deputized federal agent and brought criminal charges against him in that capacity.  (*See, e.g.*, Keddie Resp. at 2

---

[8] Because the Court concludes that the  malicious prosecution claims fail because Jones has not alleged a lack of probable cause, it need not address the State Defendants' argument that Jones failed to allege how each of the State Defendants was personally involved in initiating criminal charges.

[9] Because the Court agrees with Keddie that he was acting under color of federal law and that no *Bivens* remedy is available, it need not address Keddie's alternative arguments – that Keddie is entitled to absolutely immunity for his testimony as a witness and entitled to qualified immunity for his participation in Jones's prosecution.  Moreover, even if the Court were to recognize that a *Bivens* remedy was available for malicious prosecution claims, Jones's claims against Keddie would nevertheless fail for the same reason they fail against the State Defendants. In particular, Jones has not shown that the Defendants, including Keddie, lacked probable cause to initiate charges against him.

("Defendant Dale Keddie responds as a federal deputized agent for the United States); *id*. at 3

("In representing the executive branch of the government defendant Keddie has a duty to be

careful and not reckless in the prosecution of someone); *id*. at 4 (requesting the Court to construe

his malicious prosecution claim against Keddie as one arising under *Bivens*).)

Liability for constitutional violations under § 1983 is limited to individuals acting under

color of state law, not federal law.  *See West*, 487 U.S. at 48; *see also Groman v. Twp. of

Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold

issue; there is no liability under § 1983 for those not acting under color of law."); *Brown v.

Philip Morris, Inc*., 250 F.3d 789, 800 (3d Cir. 2001) (stating that § 1983 "is addressed only to . .

. those acting under color of state authority" and that "[i]t is well established that liability under

§ 1983 will not attach for actions taken under color of federal law").  The question of whether an

individual acts under color of state law or under color of federal law is a question of law.  *See

Yassin v. Weyker*, 39 F.4th 1086, 1089 (8th Cir. 2022), *cert. denied*, 143 S. Ct. 779 (2023) (citing

*Cuyler v. Sullivan*, 446 U.S. 335, 341 (1980)).  When making this determination, the Court must

evaluate "whether particular conduct constitutes action taken under the color of state [or instead

federal] law, and must focus on the actual nature and character of that action."  *King v. United

States*, 917 F.3d 409, 432-33 (6th Cir. 2019), *rev'd sub nom. Brownback v. King*, 592 U.S. 209

(2021); *see also Magee v. Trustees of Hamline Univ., Minn*., 747 F.3d 532, 535 (8th Cir. 2014)

("Whether a police officer is acting under color of state law turns on the nature and

circumstances of the officer's conduct and the relationship of that conduct to the performance of

his official duties." (quotation and citation omitted)).

Here, Jones refers to Keddie in the Complaint as a Bucks County Detective.  However,

the allegations describe Keddie's involvement as a DEA Task Force Officer.  Specifically, Jones

alleges that Keddie "filed" the federal criminal complaint against him and provided false testimony at the December 28, 2018 probable cause hearing in federal court.  (Compl. at 4.)  The public criminal docket reflects that Keddie filed a federal criminal complaint, including the associated "Affidavit of DEA Task Force Officer Dale Keddie," and testified at the probable cause hearing, in his capacity as a DEA Task Force Officer and not as a Bucks County Detective.  *See Jones*, Crim. No. 19-39, at ECF Nos. 1, 10, 43.  Keddie is not alleged to have been present when the State Defendants used a ruse to gain entry at Jones's residence.  The nature and character of Keddie's actions, as alleged in the Complaint, was federal, accomplished pursuant to his authority as a DEA Task Force Officer.  *See King*, 917 F.3d at 433; *see also Yassin*, 39 F.4th at 1091 ("Without any actual or purported relationship between [the defendant agent's] conduct and her duties as a St. Paul police officer, no section 1983 action is available.") (internal quotations omitted); *see also* 5 U.S.C. § 3374 (noting that when a state or local government employee is assigned to a federal agency, that individual "is deemed an employee of the agency for the purpose of . . . the Federal Tort Claims Act and any other Federal Tort liability statute").  Accordingly, because Keddie was acting under color of federal law, and not state law, he is not liable under § 1983.  *See Guerrero v. Scarazzini*, 274 F. App'x 11, 12 n.1 (2d Cir. 2008) ("[B]ecause Scarazzini and McAllister were federally deputized for their Task Force work, this claim was properly brought . . . as a *Bivens* action."); *Majors v. City of Clarksville*, 113 F. App'x 659, 659-60 (6th Cir. 2004) (explaining that a § 1983 claim brought against police officers serving with a DEA task force was "in reality a *Bivens* claim under the Fourteenth Amendment").

## 2. *Bivens* is Not an Available Remedy

Having concluded that Keddie was acting under color of federal law, the Court must next

consider whether Jones may assert a malicious prosecution claim against him pursuant to *Bivens*. *Bivens* provides a damages remedy for constitutional violations committed by federal actors in very limited circumstances.  *Egbert v. Boule*, 596 U.S. 482, 486 (2022); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017).[10]  Since *Bivens* was decided in 1971, the Supreme Court "has repeatedly refused to extend *Bivens* actions beyond the specific clauses of the specific amendments [of the Constitution] for which a cause of action has already been implied, or even to other classes of defendants facing liability under those same clauses."  *Vanderklok*, 868 F.3d at 200; *see Egbert*, 596 U.S. at 501.  The Supreme Court has recognized an implied private action against federal officials in only three cases:  (1) *Bivens* itself, which recognized an implied cause of action for violation of the Fourth Amendment's right against unreasonable searches and seizures; (2) *Davis v. Passman*, 442 U.S. 228 (1979), which recognized a claim for gender discrimination in the employment context under the Fifth Amendment's Due Process Clause; and (3) *Carlson v. Green*, 446 U.S. 14 (1980), which recognized a claim against prison officials for inadequate medical care in the prison context under the Eighth Amendment.  *See Dongarra v. Smith*, 27 F.4th 174, 180 (3d Cir. 2022); *see also Abbasi*, 582 U.S. at 131 ("These three cases - *Bivens*, *Davis*, and *Carlson* - represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself.").  "To preserve the separation of powers, the Court has 'consistently rebuffed' efforts to extend *Bivens* further . . . [because] [t]he Constitution entrusts Congress, not the courts, with the power to create new federal causes of

---

[10] Historically, federal law has provided a damages remedy to individuals whose constitutional rights were violated by *state* officials.  *See* 42 U.S.C. § 1983.  In *Bivens,* the Supreme Court for the first time implied such a cause of action for constitutional violations by federal officials, holding that "even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the [Fourth Amendment] prohibition against unreasonable search and seizures."  *Abbasi*, 137 S. Ct. at 1854.

action and remedies." *Dongarra*, 27 F.4th at 180 (citing *Hernandez v. Mesa*, 589 U.S. 93, 101 (2020)); *see also Xi v. Haugen*, 68 F.4th 824, 832 (3d Cir. 2023) ("In the fifty-two years since *Bivens* was decided, . . . the Supreme Court has pulled back the reins to what appears to be a full stop and no farther.").

"Reflecting these concerns, the Supreme Court has set forth a two-step inquiry to determine the availability of *Bivens* remedies in a particular case." *Kalu v. Spaulding*, 113 F.4th 311, 326 (3d Cir. 2024). First, the Court must consider whether "the 'case presents a new *Bivens* context'—*i.e.*, whether the 'case is different in a meaningful way from previous *Bivens* cases decided by' the Supreme Court"—using only *Bivens*, *Davis*, and *Carlson* as a benchmark as well as a "broad" understanding of what constitutes a new context. *Id.* (quoting *Abbasi*, 582 U.S. at 139). "Whether a context is new is an 'easily satisfied' test because 'a modest extension of the *Bivens* action is still an extension[,]'" meaning "[e]ven 'significant parallels to one of the Supreme Court's previous *Bivens* cases' may not be enough." *Henry v. Essex Cnty.*, 113 F.4th 355, 361 (3d Cir. 2024) (cleaned up) (quoting *Abbasi*, 582 U.S. at 147-49); *Fisher v. Hollingsworth*, 115 F.4th 197, 206 (3d Cir. 2024) ("[A] case can differ meaningfully from *Bivens, Davis*, and *Carlson* even when it involves the same constitutional right as one of those cases.").

Jones asserts a malicious prosecution claim against Keddie based on Keddie's involvement in investigating him, bringing criminal charges against him, and testifying against him at a hearing in support of those charges. In the wake of *Abbasi*, the vast majority of courts – including the United States Court of Appeals for the Third Circuit – have declined to extend a *Bivens* remedy to malicious prosecution cases, finding that these cases present new *Bivens* contexts. *See Xi*, 68 F.4th at 834 (holding that malicious prosecution claim based on "false

statement[s]" that led the government to "investigate, arrest, and prosecute" the plaintiff arise in a new *Bivens* context and declining to extend *Bivens*); *Cantú v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) (concluding that malicious prosecution claim against FBI officers based on allegations of falsified affidavits arose in new context); *Annappareddy v. Pascale*, 996 F.3d 120, 135 (4th Cir. 2021) (affirming dismissal of Fourth Amendment claims, including malicious prosecution claim, based on falsification of affidavits to obtain search warrants and falsifying evidence to obtain arrest warrant and indictment); *Farah v. Weyker*, 926 F.3d 492, 498-500 (8th Cir. 2019) (concluding that Fourth Amendment claim based on allegations that "a federally deputized officer duped prosecutors and a grand jury into believing that the plaintiffs were part of a multi-state sex-trafficking conspiracy" arose in new context and was meaningfully different from *Bivens* facts).

Because this case presents a new *Bivens* context, the Court must turn to the second step of the inquiry, which "ask[s] whether there are 'special factors counselling hesitation' in extending *Bivens*." *Kalu*, 113 F.4th at 326 (quoting *Abbasi*, 582 U.S. at 136). This second step focuses "'on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Abbasi*, 582 U.S. at 136); *see also Fisher*, 115 F.4th at 205 ("*Egbert* now requires us to ask whether 'the Judiciary *is at least arguably less equipped* than Congress' to weigh the costs and benefits of a damages action." (quoting *Egbert*, 596 U.S. at 492)). Special attention is given to the existence of an alternative remedial structure and separation-of-powers concerns. *Kalu*, 113 F.4th at 326. If there are special factors counseling hesitation, "a *Bivens* remedy will not be available." *Abbasi*, 137 S. Ct. at 1857. The Supreme Court's decisions in *Egbert*, and the cases preceding it make clear that lower courts must exercise caution and restraint before permitting

claims that present even a modest extension of *Bivens*. *Fisher*, 115 F.4th at 205 ("By itself, the 'uncertainty' that results from extending *Bivens* to a new context 'forecloses relief.' And '[t]he newness of [a] 'new context' . . . alone require[s] dismissal.'").

Here, special factors counsel against creating a *Bivens* remedy. First, an alternative remedial structures exist for wrongfully prosecuted individuals. *See Xi*, 68 F.4th at 837. The Hyde Amendment, 18 U.S.C. § 3006A, provides a prevailing defendant in a federal criminal prosecution a remedy for having his attorney's fees and costs covered by the government if he can show "'the position of the United States' in the prosecution 'was vexatious, frivolous, or in bad faith.'" *United States v. Reyes-Romero*, 959 F.3d 80, 84 (3d Cir. 2020) (citing 18 U.S.C. § 3006A); *see also See Xi*, 68 F.4th at 837 (noting that § 3006A provides an alternative remedial structure wrongfully prosecuted criminal defendants). In addition, the alleged improper actions of the law enforcement officers could have been raised during pretrial proceedings during Jones's criminal case. Indeed they were. Second, there are separation of powers concerns raised by asking the Court to preemptively examine the actions of executive branch prosecutors in the context of a civil case, as well as concerns related to the efficient administration of justice and intruding on the function of another branch of government. *See Farah*, 926 F.3d at 501 ("But such after-the-fact inquiries still pose a risk of intrusion on executive-branch authority to enforce the law and prosecute crimes, not to mention encroach on the usual secrecy of charging decisions and grand-jury proceedings."). Finally, as Keddie points out, providing a *Bivens* remedy here could "chill participation" in task force activities and interfere with cooperation among federal, local, and state law enforcement agencies to combat drug crimes. (Keddie MTD at 12-13.) Thus, as the Third Circuit counseled in *Fisher*, if there is any reason to think Congress might be better situated to weigh the costs and benefits of a damages action, courts may not do so. *Id.* at

\*5.  That uncertainty alone forecloses *Bivens* relief.   *Fisher*, 115 F.4th at 205 ("To sum up, . . . : unless a case is indistinguishable from *Bivens, Davis*, or *Carlson*, a damages remedy may be created by Congress, but not by the courts.").  Accordingly, the Court declines to permit an extension of *Bivens* in this context.  Consequently, Keddie may not be liable for any money damages under either § 1983 or *Bivens*.  The Court therefore will grant Keddie's Motion to Dismiss.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant the State Defendants' Motions to Dismiss and Dale Keddie's Motions to Dismiss.  Because Jones is unable to cure the legal defect (i.e., he is unable to prove an absence of probable cause to prosecute), the Court concludes that amendment would be futile.  Accordingly, the Complaint will be dismissed with prejudice.

An appropriate order follows.

**BY THE COURT:**

*/S/ Kai N. Scott*
_____
**KAI SCOTT, J.**